UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENTWOOL COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>NETSUITE INC,<br><br>    Defendant. | Case No.  14-cv-05264-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF Nos. 34, 35 |

Before the Court is Defendant NetSuite, Inc.'s Motion to Dismiss Plaintiff Kentwool Company's Complaint Pursuant to Federal Rule of Civil Procedure Section 12(b)(6), ECF No. 34, and Defendant NetSuite Inc.'s Request for Judicial Notice in support of the motion to dismiss, ECF No. 35.  For the reasons set forth below, the motion to dismiss is granted in part and denied in part.  The request for judicial notice is granted.

**I.   BACKGROUND**

For the purpose of deciding the motion to dismiss, the Court accepts as true the following factual allegations from the plaintiff's complaint.  ECF No. 1 Ex. A at 8.

**A.   Factual History**

Kentwool Company ("Kentwool") is a textile company headquartered in Greenville, South Carolina that "operates a state-of-the-art wool-based yarn spinning plant . . . serving a diversified international customer base."  Compl. ¶ 7.  NetSuite, Inc. ("NetSuite") is a software company and provider of Enterprise Resource Planning ("ERP") software.  Id. ¶ 8.  On or about March 14, 2013, Kentwool and NetSuite entered into a Subscription Services Agreement pursuant to which NetSuite agreed to provide its ERP software to Kentwool over a one-year term from March 18, 2013 to March 17, 2014.  Id. ¶ 10-11.  Prior to the parties entering this agreement, NetSuite represented to Kentwool on numerous occasions that it had experience in the manufacturing

1    industry and that its software could integrate the management of Kentwool's manufacturing,

2    inventory, purchasing, financial, sales, and shipping processes. Id. ¶ 12. At this time, NetSuite

3    knew that the software lacked the functionality to perform as represented. Id. ¶ 14.

4        The ERP software failed to operate as represented by NetSuite. Id. ¶ 17. Relying on

5    NetSuite's assurances that it could correct the problems with the software, Kentwool continued to

6    pay for consulting services and technical support. Id. ¶ 18. Kentwool ultimately paid NetSuite

7    $317,851.26 ― significantly more than NetSuite's original $245,784.65 estimate. Id. On or about

8    December 10, 2013, Mark Kent, the president of Kentwool, wrote to NetSuite to express doubt

9    about NetSuite's ability to perform and to demand adequate assurances that NetSuite would

10   deliver a functional product. Id. ¶ 20. In response, NetSuite submitted a revised Statement of

11   Work with a proposed additional cost of $215,912.00 and requested an extension of the

12   implementation period to May 2014. Id. ¶ 21. Because Kentwool had failed to provide assurances

13   that it would deliver a functional product and had indicated that implementation would involve

14   additional time and expenditures, Kentwool provided notice of termination of its agreement with

15   NetSuite and demanded a full refund. Id. ¶ 22. NetSuite did not agree to correct the issues with

16   the software at its own expense or to provide a refund. Id. ¶ 25.

17       **B.    Procedural History**

18       On May 27, 2014, Kentwool filed suit in a South Carolina state court, asserting the

19   following claims for relief: (1) breach of contract; (2) breach of express warranty; (3) breach of

20   implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular

21   purpose; (5) fraud/misrepresentation; (6) negligent misrepresentation; (7) violation of South

22   Carolina's Unfair Trade Practices Act; (8) fraud in the inducement; (9) rescission; and (10) unjust

23   enrichment/restitution. Compl. ¶¶ 26-95. NetSuite subsequently removed the lawsuit to the

24   United States District Court for the District of South Carolina. ECF No. 1. On December 1,

25   2014, the District Court granted NetSuite's motion to transfer venue to the United States District

26   Court for the Northern District of California on the basis of a forum selection clause in the

27

28

1  contract between the parties.[1]  ECF No. 22.

2  NetSuite filed its motion to dismiss and request for judicial notice on January 5, 2015.

3  ECF Nos. 34, 35.

### C. Jurisdiction

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## II. REQUEST FOR JUDICIAL NOTICE

NetSuite requests that in considering its motion to dismiss, the Court take judicial notice of: (A) the March 14, 2013 Subscription Services Agreement between the parties, including two associated exhibits (the Estimate/Order Form and NetSuite Professional Services Addendum); (B) NetSuite's Main Terms of Service (incorporated by reference in the Subscription Services Agreement); and (C) the March 14, 2013 Shared Statement of Work between the parties.  ECF No. 35.  Kentwool does not object to the Court taking judicial notice of either the Subscription Services Agreement and its two exhibits or NetSuite's Main Terms of Service.  ECF No. 42 at 2. Although Kentwool did file a response objecting to the Court taking judicial notice of the Shared Statement of Work because of problems with the version of the document filed by NetSuite, ECF No. 42 at 2, the parties have since filed a stipulation providing a new version of the document, correcting these deficiencies, ECF Nos. 43, 44.  Kentwool has made no other objections to the Court taking judicial notice of the Shared Statement of Work.

### A. Legal Standard

Although a court's review on a motion to dismiss is generally limited to the allegations in the complaint, the Court may properly "rel[y] on the doctrine of 'incorporation by reference' to consider documents that [are] referenced extensively in the complaint and [are] accepted by all

---

[1] In its opposition to the motion to transfer venue, Kentwool argued that because its complaint is based on fraudulent inducement, the forum selection clause was unenforceable. ECF No. 22 at 4. The court concluded, however, that "[i]n order for [it] to find a forum selection clause invalid due to fraud, the fraud must be to the clause itself and not to the agreement as a whole." Id. at 6. Because Kentwool's arguments concerning fraud related to the entire agreement and not to the forum selection clause specifically, the court found that it had failed to meet its burden to prove that the forum selection clause should not be enforced due to fraud. Id.  It reached no conclusion concerning the enforceability of the agreement as a whole.

parties as authentic." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002) (citing In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999), superseded by statute on other grounds ("[The incorporation by reference] doctrine permits a district court to consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." (internal quotation marks omitted))). The incorporation by reference doctrine extends

> to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of the document in the complaint.

Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). Under this rule, "a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment." Van Buskirk, 284 F.3d at 980. A court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2); see Sato v. Wachovia Mortg., FSB, No. 11-cv-00810-EJD (PSG), 2011 WL 2784567, at *2 (N.D. Cal. July 13, 2011).

**B. Discussion**

Defendant's request for judicial notice is granted. Kentwool's claim depends on the contents of the agreement between Kentwool and NetSuite. The parties identify all three documents as components of the agreement at issue. ECF No. 34 at 1 n.1; ECF No. 41 at 2 n.1. No party contests their authenticity. The first document, the Subscription Services Agreement, is extensively referenced in the complaint. See, e.g., Compl. ¶¶ 10-13, 27-30. Although the remaining documents are not specifically referenced in the complaint,[2] Kentwool's claim depends on the contents of the agreement of which these documents were a part. Consequently, these documents also fall within the scope of the incorporation by reference doctrine. See Knievel, 393 F.3d at 1076.

---

[2] The complaint mentions a proposed "revised Statement of Work," but not the original Statement of Work signed by the parties on March 14, 2013. See Compl. ¶ 21; ECF No. 44 at 26.

4

### III. MOTION TO DISMISS

Defendant NetSuite moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 34. NetSuite seeks an order dismissing Kentwool's first cause of action without prejudice and Kentwool's second through tenth causes of action with prejudice. Id.

#### A. Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Knievel, 393 F.3d at 1072.

Fraud claims are subject to a heightened pleading standard. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001)). To meet this standard, a "complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" Salameh v. Tarsadia Hotel, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc., 637 F.3d 1047, 1055 (9th Cir.

2011)).

## B. Discussion

### 1. Implied Warranties

NetSuite argues that Kentwool's third and fourth causes of action, for breach of an implied warranty of merchantability and breach of an implied warranty of fitness for a particular purpose, Compl. ¶¶ 35-42, must be dismissed with prejudice. ECF No. 34 at 3-7. First, NetSuite contends that Kentwool has failed to plead that the Uniform Commercial Code (UCC) applies to the transaction at issue, and that it does not apply in any event because the services aspect of the transaction predominates over the provision of goods. Id. at 3-4. Second, NetSuite argues that even if the UCC does apply to provide warranties to Kentwool, the implied warranty of merchantability and implied warranty of fitness for a particular purpose were effectively disclaimed by the parties when they entered into the contract at issue. ECF No. 34 at 5-7. Because the Court agrees that the UCC does not apply to this transaction and the warranties are therefore inapplicable, it does not consider NetSuite's alternative arguments.

The UCC applies to transactions in goods, defined as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale . . . ." Cal. Com. Code §§ 2102, 2105. Because transactions involving software often combine elements of both goods and services and "[b]ecause software packages vary depending on the needs of the individual consumer, we apply a case-by-case analysis" to determine whether a software transaction is covered by the UCC. RRX Indus., Inc. v. Lab-Con, Inc., 772 F.2d 543, 546 (9th Cir. 1985). Courts look to the essence of the agreement to "determine whether the predominant factor or purpose of the contract is rendition of services, with goods incidentally involved, or is rendition of goods, with labor incidentally involved." Simulados Software, Ltd. v. Photon Infotech Private, Ltd., No. 5:12-cv-04382-EJD, 2014 WL 1728705, at *5 (N.D. Cal. May 1, 2014); see also Gross v. Symantec Corp., No. 12-cv-00154-CRB, 2012 WL 3116158, at *8 (N.D. Cal. July 31, 2012).

Courts have generally found that "mass-produced, standardized, or generally available software, even with modifications and ancillary services included in the agreement, is a good that

is covered by the UCC." Simulados Software, 2014 WL 1728705, at *5 (collecting cases); see, e.g., RRX Indus., 772 F.2d at 546 ("Here, the sales aspect of the transaction predominates. The employee training, repair services, and system upgrading were incidental to sale of the software package and did not defeat characterization of the system as a good."). On the other hand, courts have reached varying conclusions concerning software adapted for specific customer needs. Simulados Software, 2014 WL 1728705, at *6 (collecting cases); compare Advent Sys. Ltd. v. Unisys. Corp., 925 F.2d 670, 675 (3d Cir. 1991) ("The fact that some programs may be tailored for specific purposes need not alter their status as 'goods' . . . ."), with Sys. Am., Inc. v. Rockwell Software, Inc., No. 03-cv-02232 JF (RS), 2007 WL 218242, at *4 (N.D. Cal. Jan. 26, 2007) (concluding that a software agreement was not covered by the UCC where "[t]he essence or thrust [was the] development of software from scratch and the granting of a license" and where the developer "retain[ed] all ownership rights to the software").

Here, Kentwool's complaint states that the parties entered into an agreement that "required Defendant to sell, customize, configure, and, implement its ERP Software for Kentwool's specific needs and uses [and] . . . to provide training and consulting services to enable Kentwool to utilize the Software in managing its business needs" over a one year term. Compl. ¶¶ 10-11. The Subscription Services Agreement states that NetSuite "shall make the Service available to Customer," and explains that "NetSuite shall host the Service and may update the functionality, user interface, usability and other user documentation, training and educational information of, and relating to the Service from time to time in its sole discretion . . . ." ECF No. 35, Ex. A ¶ 1. The agreement restricts Kentwool from outsourcing, renting, reselling, or sublicensing the software. Id. ¶ 3. The licensing agreement is for a term of twelve months, after which the license must be renewed. Id. ¶ 4.1.

The Court concludes that in this particular case, the predominant purpose of the contract is the provision of services, and the UCC therefore does not apply. Kentwool did not purchase pre-existing software that it could download and retain indefinitely or transfer to others. Rather, it contracted to access an online service customized for its needs, subject to updates at any time, and

available only for a fixed term.  See Simulados Software, 2014 WL 1728705, at *6 ("Where software is designed from scratch, or the transaction is mainly for one party's knowledge and skills in creating software, the software is often found to be a service rather than a good.").  Because the UCC does not apply to this transaction, the implied warranty claims are dismissed without leave to amend.[3]

### 2. Fraud and Negligent Misrepresentation

NetSuite next argues that Kentwool's fifth, sixth, and eighth causes of action ─ for fraud by misrepresentation, negligent misrepresentation, and fraud in the inducement ─ fail because (1) fraud cannot consist of promises contrary to those contained in the parties' integrated written contract; (2) Kentwool has not pleaded justifiable reliance; and (3) in any event, fraud was not pleaded with particularity as required by Federal Rule of Civil Procedure 9(b).  ECF No. 34 at 8-13.

#### a. Parol Evidence Rule

Kentwool's fraud and misrepresentation claims involve statements made by NetSuite, both before and after the Subscription Services Agreement was signed, concerning NetSuite's experience and the capabilities of its software.  The parties' Subscription Services Agreement and Statement of Work contain unambiguous language indicating that the written contract is fully integrated.  For example, the Subscription Services Agreement contains the following statement:

> This Agreement, including all exhibits and/or Estimate/Order Forms, shall constitute the entire understanding between Customer and NetSuite and is intended to be the final and entire expression of their agreement.  The parties expressly disclaim any reliance on any and all prior discussions, emails, RFP's and/or agreements between the parties.  There are no other verbal agreements, representations,

---

[3] In its reply brief, Netsuite makes the additional argument that because title never passed from Netsuite to Kentwool, no "sale" was consummated under the California UCC, and so the UCC does not apply.  See ECF No. 45 at 6-8; Cal. Com. Code § 2106.  It is unnecessary for the Court to reach that argument, however, since the Court concludes that the software at issue is not subject to the UCC because it is not a "good."  In any event, the Court does not consider new facts or argument made for the first time on reply.  "It is inappropriate to consider arguments raised for the first time in a reply brief."  Ass'n of Irritated Residents v. C & R Vanderham Dairy, 435 F.Supp.2d 1078, 1089 (E.D. Cal. 2006).

8

warranties[,] undertakings or other agreements between the parties. ECF No. 35 Ex. A ¶ 9. NetSuite seeks to rely on the parol evidence rule, which "generally prohibits the introduction of any extrinsic evidence, whether oral or written, to vary, alter or add to the terms of an integrated written instrument." Casa Herrera, Inc. v. Beydoun, 32 Cal. 4th 336, 343 (2004); see also Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n, 55 Cal. 4th 1169, 1174 (2013) ("[W]hen the parties put all the terms of their agreement in writing, the writing itself becomes the agreement. The written terms supersede statements made during the negotiations . . . to ensure that the parties' final understanding, deliberately expressed in writing, is not subject to change.").

While the parol evidence rule precludes reliance on extrinsic evidence to vary the terms of a fully integrated contract, it does permit the use of extrinsic evidence to prove fraud. Cal. Code Civ. Proc. § 1856(g). In Riverisland, the California Supreme Court recently reaffirmed "the venerable maxim[:] . . . [I]t was never intended that the parol evidence rule should be used as a shield to prevent the proof of fraud." 55 Cal. 4th at 1182 (internal quotation marks omitted). This exception has been interpreted to permit both fraud and negligent misrepresentation claims to go forward, even in the face of an integration clause. See Thrifty Payless, Inc. v. Americana at Brand, LLC, 218 Cal. App. 4th 1230, 1241 (2013) ("[U]nder Riverisland, extrinsic evidence is admissible to establish fraud or negligent misrepresentation in the face of the lease's integration clause.").

NetSuite seeks to avoid this result by pointing to cases concluding that plaintiffs may not assert fraud claims involving promises that contradict the terms of their written agreements. See Rosenthal v. Great Western Fin. Sec. Corp., 14 Cal. 4th 394, 423 (1996) (negligent failure to acquaint oneself with the contents of a written agreement precludes a finding that the contract is void for fraud in the execution); Groth-Hill Land Co., LLC v. General Motors LLC, No. 13-cv-1362-TEH, 2013 WL 3853160, at *15 (N.D. Cal. July 23, 2013) (plaintiffs are barred from introducing alleged oral promises which contradict the terms of the written agreements they signed); Crane v. Wells Fargo, No. 13-cv-01932-KAW, 2014 WL 1285177, at *6 (N.D. Cal. Mar. 24, 2014) ("a fraud claim may not consist of promises that run counter to the written contract").

The reasoning of these cases does not apply here, for two reasons. First, the cases do not address situations in which plaintiffs, like Kentwool, attack the validity of the contract. See Groth-Hill Land Co., 2013 WL 3853160, at *15 ("Plaintiffs are correct that a fraud exception to the parol evidence rule permits the use of extrinsic evidence to attack the validity of an integrated agreement."); Riverisland, 55 Cal. 4th at 1183 n.11 ("We expressed no view in Rosenthal on the 'validity' and 'exact parameters' of a more lenient rule that has been applied when equitable relief is sought for fraud in the inducement of a contract."); see also May v. Semblant, Inc., No. 13-cv-01576-BLF, 2014 WL 3725296, at *4 (N.D. Cal. July 23, 2014) ("Typically, application of the fraud exception to the parol evidence rule would be urged by a party to a written contract challenging the validity of the written agreement, seeking rescission or damages caused by fraudulent inducement . . . "). Second, Kentwool does not seek to enforce promises that "run counter to the terms of the written contract[]." Groth-Hill Land Co., 2013 WL 3853160, at *15. Rather, Kentwool's claims involve misrepresentations concerning the functionality of the ERP software NetSuite agreed to provide and NetSuite's ability to implement the software and correct problems as they arose ─ statements that are consistent with the agreements contained in the contract.

### b.  Justifiable Reliance

One necessary element of a fraud claim is justifiable reliance on the alleged misrepresentation. Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996). NetSuite contends that Kentwool has failed to plead justifiable reliance because its claim that it relied on NetSuite's pre-contract and post-contract statements, despite the existence of a fully integrated contract signed by two sophisticated parties, is precluded by the California Supreme Court's decision in Rosenthal. ECF No. 34 at 12-13 (citing Rosenthal, 14 Cal. 4th at 419). As discussed above, the court's analysis in Rosenthal concerning whether parties may justifiably rely on misrepresentations when they do not read their contracts does not apply here.

In the complaint, Kentwool states:

> Based on NetSuite's superior knowledge of its Software and its ability to customize, configure, and implement the Software for

10

> Kentwool's specific needs and uses, Kentwool, who had no actual knowledge of the Software's capabilities, justifiably relied upon NetSuite's representations by entering into the Agreement and continuing the relationship with NetSuite.

Compl. ¶ 51; see also ¶¶ 65, 82. The Court concludes that these statements are sufficient to plead justifiable reliance at this stage.

### c. Rule 9(b)

Having concluded that Kentwool's fraud claims are not barred by the parol evidence rule, the Court considers NetSuite's alternate argument that Kentwool has failed to meet the heightened pleading requirements for fraud claims. ECF No. 34 at 8; see Fed. R. Civ. P. 9(b). To meet the standard, the "complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" Salameh, 726 F.3d at 1133 (quoting Cafasso, 637 F.3d at 1055).

For reasons discussed more fully in Howard v. First Horizon Home Loan Corporation, No. 12-cv-05735-JST, 2013 WL 6174920 (N.D. Cal. Nov. 25, 2013), the Court concludes that Rule 9(b) does not apply to claims for negligent misrepresentation. In Howard, the Court explained that "the language and underlying policy of Rule 9(b) do not support applying that rule to claims for negligent misrepresentation . . . . '[B]ecause an allegation of negligent misrepresentation suggests only that the defendant failed to use reasonable care ─ an objective standard ─ it does not result in the kind of harm that Rule 9(b) was designed to prevent.'" Id. at *5 (quoting Petersen v. Allstate Indem. Co., 281 F.R.D. 413, 418 (C.D. Cal. 2012)). Accordingly, NetSuite's motion to dismiss Kentwool's negligent misrepresentation claim for failure to satisfy the Rule 9(b) pleading requirements is denied.

Rule 9(b) does, of course, apply to Kentwool's fifth and eighth causes of action, for fraud/misrepresentation and fraud in the inducement. The Court concludes that, as to these claims, the complaint fails to adequately "identify the who, what, when, where, and how of the misconduct" such that defendants have "notice of the particular misconduct" alleged. Salameh, 726 F.3d at 1133; Kearns, 567 F.3d at 1124. Kentwool alleges the following:

> Prior to Kentwool entering into the Agreement with NetSuite,

11

> NetSuite represented to Kentwool that the Software would integrate the management of Kentwool's manufacturing, inventory, purchasing, financial, sales and shipping processes, specifically including providing visibility and management of blended products through the manufacturing process. NetSuite further represented to Kentwool that the Software functionality would include, among others, advanced financials, item management, production planning, manufacturing control, cost control, lot and serial control, multi-division/multi-site solutions, and order management.
>
> During the implementation process NetSuite represented to Kentwool that it would, and did, correct the problems experienced by Plaintiff so that the Software would perform as originally represented to Kentwool. . . .
>
> NetSuite also represented to Kentwool that complete implementation would be achieved on or around October 1, 2013.

Compl. ¶¶ 44-45, 76. Although Kentwool has indicated what the misrepresentations were, the complaint does not describe with particularity which representative or representatives of NetSuite made these statements, when they were made, where they were made, or whether they were made in person, by phone, or via email or other correspondence. Because Kentwool has not given NetSuite adequate notice of "the who, what, when, where, and how of the misconduct" alleged, as required by Rule 9(b), its fraud claims are dismissed with leave to amend.

### 3. Breach of Contract

"A cause of action for breach of contract requires pleading of a contract, plaintiff's performance or excuse for failure to perform, defendant's breach and damage to plaintiff resulting therefrom." McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1489 (2006). "[I]t is unnecessary for a plaintiff to allege the terms of the alleged contract with precision," but "the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached." Langan v. United Servs. Auto. Ass'n., No. 13-cv-04994-JST, 2014 WL 4744790, at *7 (N.D. Cal. Sept. 23, 2014).

NetSuite argues that Kentwool's claim for breach of contract must be dismissed because plaintiff has failed to (1) allege that it performed its obligations under the contract and (2) point to the terms of the contract that it claims were breached. ECF No. 34 at 13-14. The Court concludes

that Kentwool has adequately pleaded its breach of contract claim. In the complaint, Kentwool states that "Kentwool paid NetSuite $317,851.26, satisfying its obligations under the Agreement." Compl. ¶ 28. NetSuite correctly points out the agreement between the parties allocates other responsibilities to Kentwool in addition to payment. See, e.g., ECF No. 44 at 17 (describing "Customer Roles"). Pleading that Kentwool paid is therefore not necessarily tantamount to pleading that Kentwool performed. However, the complaint includes the phrase, "satisfying its obligations under the Agreement." Compl. ¶ 28. Construing the pleadings in the light most favorable to Kentwool, the Court therefore finds that the complaint adequately alleges that Kentwool satisfied all of its obligations under the contract.

The Court also finds that Kentwool's complaint, which described "a valid and existing contract for the purchase, customization, configuration, and implementation of NetSuite's ERP software for Kentwool's specific needs and uses," adequately alleged that NetSuite breached the contract "by supplying defective and non-functional Software, and/or failing to properly configure and implement functional software." Compl. ¶¶ 27, 29; see Ronpak, Inc. v. Elecs. for Imaging, Inc., No. 14-cv-04058-JST, 2015 WL 179560, at *5 (N.D. Cal. Jan. 14, 2015) (finding that plaintiff adequately alleged that defendant failed to perform under the contract where plaintiff alleged that defendant "failed to deliver functioning software;" that defendant was required "to deliver functional software as promised in the license agreement, to configure the software and/or deliver software that is configurable by either party;" and that defendant "failed to meet any of its obligations under the license agreement").

For the foregoing reasons, NetSuite's motion to dismiss the breach of contract term is denied.

### 4. Express Warranty and South Carolina's Unfair Trade Practices Act

NetSuite next argues that Kentwool's second cause of action for breach of an express warranty must be dismissed with prejudice because it is based on statements inconsistent with the terms of the parties' fully integrated written contract and is therefore barred by the parol evidence rule. ECF No. 34 at 14. Similarly, NetSuite contends that any claim under South Carolina's

1   Unfair Trade Practices Act is barred by the choice of law provision in the parties' contract. Id. at
2   14-15; see ECF No. 35 Ex. A ¶ 9. Kentwool maintains that it has properly pleaded alternative
3   theories of recovery, including that the contract is void due to fraud, rendering NetSuite's warranty
4   disclaimers and the choice of law provision ineffective. ECF No. 41 at 8, 17-18 (citing Compl. ¶¶
5   75-90). Because Kentwool has not adequately pleaded a claim for fraud, the express warranty
6   claim and Unfair Trade Practices Act claim, which rely on the written contract being invalid,
7   necessarily fail. These causes of action are therefore dismissed with leave to amend. See PlasPro
8   GMBH v. Gens., No. 09-cv-04302-PSG, 2011 WL 1000755, at *5 (N.D. Cal. Mar. 21, 2011).

### 5. Rescission, Unjust Enrichment, and Restitution

Kentwool's rescission, unjust enrichment, and restitution claims also depend on Kentwool's claims that the contract is invalid due to fraud. See Plaspro GMBH, 2011 WL 1000755, at *5 ("[Plaintiff] has not adequately pleaded a claim for fraud. Therefore, any claim based on fraud, including rescission based on fraud, necessarily fails."); Svenson v. Google, Inc., No. 13-cv-04080-BLF, 2014 WL 3962820, at *4 (N.D. Cal. Aug. 12, 2014) ("A plaintiff may not plead the existence of an enforceable contract and maintain a quasi-contract claim at the same time, unless the plaintiff has pled facts suggesting that the contract may be unenforceable or invalid."). Accordingly, the rescission cause of action is dismissed with leave to amend.

Kentwool's claims for unjust enrichment and restitution suffer from the additional defect that they duplicate each other. In California "'[t]here is no cause of action for unjust enrichment. Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust.'" Clancy v. The Bromley Tea Co., No. 12-CV-03003-JST, 2013 WL 4081632, at *11 (N.D. Cal. Aug. 9, 2013) (quoting Myers–Armstrong v. Actavis Totowa, LLC, 382 Fed. Appx. 545, 548 (9th Cir.2010) (unpublished). "The doctrine applies where plaintiffs, while having no enforceable contract, nonetheless have conferred a benefit on defendant which defendant has knowingly accepted under circumstances that make it inequitable for the defendant to retain the benefit without paying for its value." Hernandez v. Lopez, 180 Cal. App. 4th 932, 938, 103 Cal. Rptr. 3d 376, 380 (2009), as modified (Dec. 28, 2009). If Kentwool amends its

United States District Court
Northern District of California

complaint, it must eliminate its duplicative unjust enrichment claim.

## CONCLUSION

For the reasons discussed above, Defendant's motion to dismiss is denied as to Kentwool's breach of contract and negligent misrepresentation claims. The motion is granted with leave to amend as to Kentwool's claims for breach of express warranty, fraud/misrepresentation, violation of Unfair Trade Practices Act, fraud in the inducement, rescission, and unjust enrichment/ restitution. The motion is granted with prejudice as to Kentwool's claims for breach of implied warranty of merchantability and breach of implied warranty for a particular purpose.

Any amended complaint shall be filed within thirty days of the date of this order.

IT IS SO ORDERED.

Dated: February 18, 2015

_____
JON S. TIGAR
United States District Judge